**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ARCHIE D. THOMPSON, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   CIVIL NO.  04-4162-GPM |
| | ) |
| MEMORIAL HOSPITAL OF | ) |
| CARBONDALE, | ) |
| | ) |
| **Defendant.** | ) |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

The Court heard arguments on Defendant's pending motion on January 19, 2007.  For the reasons set forth on the record at the hearing and below, Defendant's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff, an African-American, worked in an Emergency Medical System as a Emergency Medical Technician Paramedic (EMT).  Plaintiff claims that he suffered racial discrimination in employment which led to his constructive discharge.

Plaintiff was an EMT for Jackson County Ambulance Service, which is part of an Emergency Medical Services (EMS) System.  In Illinois, EMS Systems are comprised of: 1) hospitals, 2) vehicle service providers, and 3) personnel.  In this case, the participating hospital is Memorial Hospital of Carbondale, and the vehicle service provider is Jackson County Ambulance Service.  The relationship between these entities is governed by the Illinois Emergency Medical

Services (EMS) Systems Act at 210 ILCS 50/1, *et seq*.

When responding to an ambulance call, EMTs must often provide emergency medical treatment such as a needle injection or an intravenous treatment (IV). Thus, EMTs must operate under a medical license and can function only under the direction of a licensed Medical Director. Here, the EMS Medical Director was Dr. Doolittle. Dr. Doolittle was responsible for overseeing the medical services administered by Defendant's EMTs, including the medical services that were provided by Plaintiff. Under Dr. Doolittle was Paula Bierman, an EMS Coordinator. As EMS Coordinator, Ms. Bierman was responsible for overseeing compliance issues, skill deficiencies, and training of EMTs. Memorial Hospital compensated both Dr. Doolittle and Ms. Bierman for their services in the EMS system.

Plaintiff began working for Jackson County Ambulance Service (JCAS) in October 1996. Plaintiff alleges that during 1998 and 1999 Ms. Bierman told him, "You can't do what other paramedics do," and "I'll be watching you." Plaintiff claims that he asked her if the reason she said this was that he was black, and she responded, "Yes." Plaintiff also claims that Ms. Bierman told him that she could not invite him into her home because she did not know how her neighbors would react to a "black man" in her neighborhood.

During 2000, Plaintiff expressed an interest to Ms. Bierman in becoming a Supervisor. Ms. Bierman, however, told him that to become a Supervisor, he must first become a "Preceptor." (A "Preceptor" is a person who mentors and monitors other EMTs.) Plaintiff then told Bierman that he wanted to become a Preceptor, and she responded that he must first obtain some teaching experience. Plaintiff then asked Bierman for some teaching experience, but she did not give him a teaching assignment. Plaintiff did, however, receive a teaching opportunity from an instructor at

John A. Logan College which Plaintiff rejected.

On September 29, 2003, Plaintiff responded to an ambulance call where a woman had lapsed into a diabetic coma. After arrival, Plaintiff injected her with glucose and started her on an IV but failed to contact Medical Control personnel. Applicable protocol required that anytime an EMT administers medicine or an IV, the EMT must contact Medical Control.

Plaintiff's failure to contact Medical Control was reported to Paula Bierman. Ms. Bierman reported the incident to Dr. Doolittle and recommended that Plaintiff be suspended. Dr. Doolittle rejected Ms. Bierman's recommended suspension. Instead, Dr. Doolittle placed Plaintiff on ninety (90) days of probation beginning October 6, 2003.

In mid to late October, Plaintiff applied for an open Supervisor position. On October 28, 2003, JCAS Director Dottie Miles sat down with Plaintiff and discussed his application. Plaintiff was not promoted to Supervisor. On November 11, 2003, Plaintiff filed an EEOC charge of discrimination against Defendants. In December 2003, Plaintiff took a leave of absence under the Family Medical Leave Act (FMLA) due to job stress. When Plaintiff returned, he was informed that because he took FMLA leave in December 2003, he had interrupted the completion of his 90-day probationary period, and he still had six-weeks left on probation. Shortly thereafter, in February 2004, Plaintiff began taking general leaves of absence on a monthly basis. On July 7, 2004, Plaintiff resigned by sending a letter to Dottie Miles indicating that he would not return to employment.

### ANALYSIS

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.

CIV. P. 56(c).  In considering a summary judgment motion, a court must review the entire record and draw all reasonable inferences in the light most favorable to the non-moving party.  *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999).  In evaluating a motion for summary judgment, "[t]he court has one task and one task only:  to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."  *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

To avoid summary judgment on his discrimination claims, Plaintiff must present facts from which a reasonable juror could find that Defendant discriminated against him because of his race. Plaintiff has sued under Title VII and 42 U.S.C. §§ 1981, 1983.  Title VII forbids certain employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his … terms, conditions, or privileges of employment, because of such individual's race, . . ."  42 U.S.C. § 2000e-2(a)(1).  The anti-retaliation provision also forbids employers from taking an adverse employment action against an employee for opposing discrimination.  42 U.S.C. § 2000e-3(a).  The same standards apply under Title VII, § 1981, and § 1983. *Steinhauer v. DeGolier*, 359 F.3d 481, 483 (7th Cir. 2004) (*citing Friedel v. City of Madison*, 832 F.2d 965 (7th Cir.1987)) ("When the plaintiff alleges intentional discrimination … it is clear that the same standards in general govern liability under sections 1981, 1983, and Title VII").

Plaintiff claims that Defendant discriminated against him by failing to promote him to Supervisor and by failing to give him training opportunities.  The record is clear, however, that Plaintiff did not possess the qualifications required to become a Supervisor.  To become a Supervisor, Plaintiff must have first become a Preceptor.  To become a Preceptor, Plaintiff must have had some teaching experience.  Plaintiff did not obtain any teaching experience.  Although he

claims that Ms. Bierman discriminated against him by not giving him a teaching assignment, the undisputed fact is that Plaintiff had been offered a teaching assignment at John A. Logan College which he declined.  Because Plaintiff did not obtain teaching experience so that he could become a Preceptor, Plaintiff was simply not qualified to become a Supervisor.

Plaintiff argues that Ms. Bierman made Clay McDonnough, a white male, a Preceptor even though he did not have teaching experience.  The record is clear, however, that the teaching requirement for a Preceptor is mandated by the State of Illinois.  The record is also clear that Mr. McDonnough became a Preceptor before teaching experience was required, and then when the State requirement was passed, McDonnough lost his Preceptor status.

Plaintiff also claims that Defendant discriminated against him by creating a hostile work environment that led to his constructive discharge.  Specifically, Plaintiff alleges that in 1999 Ms. Bierman made two racially derogatory remarks to him.  To prove a "hostile work environment," however, the alleged harassment must be "both subjectively and objectively so severe or pervasive as to alter the conditions" of Plaintiff's employment and "create an abusive working environment." *Whittaker v. Northern Illinois University*, 424 F.3d 640, 645 (7th Cir. 2005) (*citing Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975 (7th Cir. 2004)).  "In determining whether the environment was objectively hostile, a court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work."  *Whittaker*, 424 F.3d at 645 (*citation omitted*).  Indeed, the threshold for Plaintiff is high, as "[t]he workplace that is actionable is one that is 'hellish.'" *Id.*, (*citing Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997)).  Upon review of the record, and after hearing argument, Plaintiff has failed to show work

conditions sufficiently egregious to meet the high hostile work environment standard.

"Working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because in the ordinary case, an employee is expected to remain employed while seeking redress." *Whittaker*, 424 F.3d at 649 (*citing Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000)).  To support a constructive discharge claim, Plaintiff must show that Defendant deliberately made his "working conditions so onerous or demeaning that he [w]as effectively … fired in place and compelled to leave." *Monaco v. Fuddruckers, Inc.*, 1 F.3d 658, 661 n.4 (7th Cir. 1993) (*quoting Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 314 (7th Cir. 1986), *cert. denied*, 479 U.S. 1092 (1987) (*other citations omitted*)).  Upon review of the record, and after hearing argument, Plaintiff has failed to show work conditions sufficiently egregious to meet the high hostile work environment standard, thus, he cannot meet the even higher showing required to support a constructive discharge.

Plaintiff also claims that Defendant retaliated against him for attending an Illinois Department of Human Rights hearing on behalf of a fellow employee.  Specifically, Plaintiff claims that Defendant retaliated against him by extending his probationary period for six more weeks.  The record is clear, however, that Plaintiff's probationary period was not extended, rather, Plaintiff took FMLA leave before the probationary period was over, thus, he never completed his probationary period.  Accordingly, when Plaintiff returned from FMLA leave, he needed to complete the rest of his probationary period.  There is no evidence that Defendant took any adverse employment action with regard to the length of Plaintiff's probation, thus, his retaliation claim fails.  "Failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim." *Roney v. Illinois Dept. of Transp.*, 2007 WL 117507 at *2 (7th Cir. Jan. 18, 2007) (*citing Hudson v. Chicago Transit*

*Auth.*, 375 F.3d 552, 560 (7th Cir. 2004)).

Finally, Plaintiff claims that Defendant discriminated against him by disciplining him with probationary status. Upon review of the pleadings and the facts alleged in this case, the Court finds that there are genuine issues of material fact that preclude granting Defendant summary judgment on this claim. Accordingly, Defendant's motion is denied with respect to Plaintiff's disparate treatment claim based on disparate discipline.

### CONCLUSION

Defendant's motion for summary judgment (Doc. 41) is **GRANTED in part and DENIED in part**. Defendant's motion is granted with respect to Plaintiff's disparate treatment claims regarding training opportunities and promotion to Supervisor, and his hostile work environment, constructive discharge, and retaliation claims. Defendant's motion is denied as to Plaintiff's claim of disparate treatment when he was disciplined for violating protocol by being placed on probation.

**IT IS SO ORDERED.**

DATED: 1/26/07

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
Chief United States District Judge